22 C. C. P. A. (Patents)

## In re PFISTER.

### Patent Appeal No. 3482.

Court of Customs and Patent Appeals.
May 27, 1935.

John W. Steward, of Paterson, N. J. (B. G. Foster, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 13 to 16, inclusive, in appellant's application for a patent for an alleged invention relating to a thickener for use in printing, "for instance, of textiles," consisting of a prepared gum solution having the calcium elements disunited, as stated in claims 13 and 15, or removed, as stated in claims 14 and 16, "from the remainder of a substantial amount of the molecules constituting the calcium compound present in the gum."

The claims read:

"13. A thickener for use in printing consisting of a solution of one of the herein-indicated prepared gums having the calcium elements disunited from the remainder of a substantial amount of the molecules constituting the calcium compound present in the gum.

"14. A thickener for use in printing consisting of a solution of one of the herein-indicated prepared gums having the calcium elements removed from the remainder of a substantial amount of the molecules constituting the calcium compound present in the gum.

"15. A thickener for use in printing consisting of a prepared gum solution having the calcium elements disunited from the remainder of a substantial amount of the molecules constituting the calcium compound present in the gum.

"16. A thickener for use in printing consisting of a prepared gum solution having the calcium elements removed from the remainder of a substantial amount of the molecules constituting the calcium compound present in the gum."

The references are: Allen's Commercial Organic Analysis, pp. 558, 559; Thorpe's Dictionary of Chemistry, vol. III, pp. 488, 491—copy in Div. 6; Chemical Abstracts, vol. VI, p. 3311; vol. 19, p. 3094.

It will be observed that claims 13 and 15 differ only in that claim 13 contains the language "consisting of a solution of one of the herein-indicated prepared gums," whereas, claim 15 contains the language "consisting of a prepared gum solution," and that claims 14 and 16 differ in the same respect.

In its original decision, the Board of Appeals, among other things, said:

"The Examiner cited Allen's Commercial Organic Analysis, pages 558 and 559, as showing respectively the dialysis method and the ammonium oxalate method of treating gums to purify them. [Appellant discloses the same methods.] This reference refers to gum arabic as does also the Chemical Abstracts, page 3094, reference and the Thorpe Dictionary of Chemistry, page 488, reference but they all state that the gum arabic contains calcium in combination. Appellant contends that gum arabic is not a prepared gum and that he is not concerned therewith. The Thorpe Dictionary of Chemistry contains a reference to Irish Moss and the extraction of 'the calcium salt of a colloidal ethereal sulphate.' Appellant admits that this reference is to a prepared gum.

"The above references do not specifically refer to the use of the gums therein mentioned as thickeners for use in printing. Applicant admits, however, in the portion of his specification quoted above that prepared vegetable gum solutions are in common use as thickeners in printing. We agree with the Examiner that there would be no invention in using as the prepared gum in the printing thickener the particular gums mentioned in the above references as having their calcium element disunited or removed. This follows from the well recognized practice that an inventor is entitled to all uses to which his product is adapted. Especially is this true in the present case in view of the fact that prepared vegetable gums have been in common use as printing thickeners, at least where the calcium element had not been removed therefrom."

Thereafter, appellant filed a request for a reconsideration of the issues involved.

In denying the request, the board stated: "Appellant claims a thickener having the calcium elements disunited from the remainder of the molecules containing the calcium compound present in the prepared gum. He states in his specification that this may be effected by precipitation or dialysis and that preferably the resulting calcium compound is filtered out or treated to

render it soluble. The Irish Moss reference which appellant admits discloses a prepared gum has the calcium salt removed. Other references claim the treatment of gum arabic by dialysis or precipitation to remove the calcium (see especially pages 558 and 559 of Allen's Commercial Organic Analysis). If there could be any question about this treatment being also applicable to prepared gums, we think there would be no invention in trying it out. (In re Wietzel and Michael [39 F.(2d) 669] 1930 C. D. bottom of page 538.)"

It will be observed from its decisions that, for the purposes of this case, the board recognized that "gum arabic"—an unprepared gum, referred to in the references Allen's Commercial Organic Analysis, and Chemical Abstracts, supra—was substantially different from that class of gums known as "prepared gums," referred to in the appealed claims:

It will further be observed that the only reference pertaining to "prepared gums"—the so-called "Irish Moss" reference, Thorpe's Dictionary of Chemistry, supra—teaches, as stated by the Board of Appeals, the removal of the entire calcium compound from such gums, and not the disuniting or removal of the "calcium elements" only, as called for by the appealed claims.

Counsel for appellant insist that the disclosures in the references of the removal of "calcium" from gum arabic, an unprepared gum, do not suggest that prepared gums might be improved for use as thickeners by disuniting, and, if desired, removing, the calcium elements.

It is further contended by counsel for appellant that the problem confronting appellant related to the prepared gums only, which, it is said, are superior, for use as thickeners, to unprepared gums. This statement is not challenged in the decisions of the Board of Appeals. On the contrary, in its decision denying appellant's request for reconsideration, the board summarized its views with the statement that if there was any question as to the results to be obtained by treating "prepared gums" in the manner taught by the references for treating "gum arabic"—an unprepared gum—for the purpose of disuniting, and, if desired, removing, the calcium elements, there "would be no invention in trying it out," and, in support of its views, cited the case of In re Wietzel et al., 39 F.(2d) 669, 17 C. C. P. A. (Patents) 1079.

In the Wietzel Case, supra, it was held in substance, as stated in the brief of the Solicitor for the Patent Office, "that where the art suggests a chemical process with respect to some materials, and it is logical to assume it would work with others of a related nature, 'there is no invention in trying it and finding out that the process is successful.'"

Accordingly, the question before us is whether it is logical to assume, as argued by the Solicitor for the Patent Office, and as held by the Board of Appeals, that the only problem confronting appellant was to try out the process of disuniting, and, if desired, removing, the calcium elements from the calcium combination present in prepared gums, for the purpose of producing a superior thickener for use in printing, in view of the fact that it was old "as a matter of chemistry," as taught by the prior art, to disunite the calcium elements from the unprepared gums, such as gum arabic.

It should be remembered that appellant was confronted with the practical problem of producing a "thickener" superior to anything theretofore produced from either "prepared" or "unprepared" gums, and that, in order to do so, he discovered that it was necessary to disunite, and, if desired, remove, the calcium elements from the calcium compound constituent of the prepared gums.

It is argued by counsel for appellant that "thickeners formed of the 'prepared' gums have, potentially, an efficiency superior to that of thickeners formed of gum arabic, but they are 'limited in solubility' and tend to jell or coagulate in the presence of the color materials with which they are mixed * * * instead of remaining syrupy-bodied and free-flowing, wherefore they are not adapted as reliably superior thickeners," and that appellant "has produced a 'prepared' gum thickener which is not only potentially but reliably superior to gum arabic thickeners." The substance of those statements is not challenged in the decisions of the Board of Appeals, nor in the brief of the Solicitor for the Patent Office.

It is true, as stated by the Board of Appeals, that appellant's processes for disuniting the calcium elements from the calcium compound present in the prepared gums are substantially the same as those disclosed in the prior art relative to the disuniting of calcium elements from gum arabic, an unprepared gum. Nevertheless,

there is nothing in the prior art that would even tend to suggest that such processes, when applied to prepared gums, would produce appellant's superior "thickener." Accordingly, we are of opinion that the principle announced in the case of In re Wietzel et al., supra, is not applicable to the issues here involved.

Appellant has produced a superior product, and, although the issues presented are not simple of solution, we are of opinion that, in view of the facts of record, it was not suggested by the prior art, and involves invention.

In its original decision, the Board of Appeals stated that claims 15 and 16 differ from claims 13 and 14 respectively only in substituting the words "prepared gum solution" in place of the words "solution of one of the herein-indicated prepared gums" found in claims 13 and 14. Appellant states that he filed claims 15 and 16 in view of the Examiner's criticism of the expression "herein-indicated" in claims 13 and 14 and that he is willing to accept either set of claims.

We think claims 15 and 16 are patentable, and sufficiently define appellant's invention.

For the reasons stated, the decision of the Board of Appeals is modified, being affirmed as to claims 13 and 14, and reversed as to claims 15 and 16.